No. 28,827.

THE STATE OF KANSAS, *Appellee,* v. WILLIAM JOHNSON, *Appellant.*

(282 Pac. 723.)

Opinion filed December 7, 1929.

*D. G. Smith,* of Girard, for the appellant.

*William A. Smith,* attorney-general, *R. O. Mason,* assistant attorney-general, *Thomas D. Winter,* county attorney, and *B. W. Weir,* assistant county attorney, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The defendant, William Johnson, a rural school teacher, was convicted of statutory rape upon the person of one of his pupils, Anna May McClellan, a thirteen-year-old girl.

During the winter of 1923-1924 defendant was the teacher in a rural-school district not far from Girard. The prosecuting witness and her sister Gladys, who was two years older than Anna May, attended that school. On one occasion during the noon intermission and while all the pupils were outside at play except these two sisters, defendant picked up the prosecuting witness and carried her out of the main schoolroom into a hall or cloakroom and had sexual intercourse with her. On various occasions that winter defendant es-

corted the sisters to evening meetings in the neighborhood and at some such times had sexual intercourse with the prosecuting witness —even in the presence of her sister. On July 6, 1924, Anna May gave birth to a stillborn child, and about a year later Anna May's mother caused defendant's arrest for statutory rape. His prosecution and conviction followed, and from the judgment and sentence he appeals.

The first error urged is based on the trial court's ruling that it was immaterial how many instances of *crim. con.* the prosecuting witness and her sister might have been engaged in with persons other than the defendant. But as the trial progressed the court's attention was called to this court's ruling in *State v. Gereke,* 74 Kan. 196, 200, 86 Pac. 160, 87 Pac. 759; and the court was thus led to see that such facts might have a bearing upon their veracity, and the ruling complained of was corrected, and such testimony was admitted in evidence. Whatever these promiscuous immoralities were, if any, their number and variety had no bearing upon the guilt or innocence of the defendant. If these were sufficiently notorious—and counsel for defendant argues that they were—the delinquency of the defendant would appear to be the more reprehensible, he being the erring girls' teacher and having a responsibility for the correction of their waywardness scarcely less than that of their parents. (24 R. C. L. 627, 649.) Certainly he ought to have been the very last man to take advantage of his pupils' sensuality, and the trial court's ruling on the evidence touching the existence of immoral relations between the state's witnesses and other men or boys furnishes no basis for reversing this judgment.

Error is assigned on the alleged prejudicial remarks and conduct of the court. The only places in the record where anything of that kind appears are in affidavits of defendant and his attorney. These affidavits recite that until shown the pertinent law relating to the relevancy of immoralities with other persons than defendant the trial judge was quite emphatic in his ruling that these matters "didn't make a bit of difference"; and when bystanders in the court room laughed at some incident in the course of the trial, the trial judge reprimanded them "with a serious aspect and in a ferocious way, in the presence of the jury," thus—

"It looks like I will have to get a special officer to clear the court room. To resort·to the common language of the street, you make me tired. This is a serious matter, a very serious matter. You ought to be ashamed of yourselves. You ought to be out behind the house a-cryin' your head off, and you would if it was your girl."

It does not appear that timely objection was made to the court's remarks or conduct complained of, nor indeed is the truth of these alleged matters established (*State v. Evans,* 119 Kan. 469, 239 Pac. 996). In any event it does not appear that prejudicial error arose therefrom.

Error is also predicated on the overruling of defendant's motion for a new trial, which was based, in part, on this alleged incident: Defendant's counsel averred that following the discharge of the jury he had a conversation with one of their number who said that the jurors did not believe the testimony of Anna May McClellan and her sister, and defendant's counsel then asked him: "In that event why did you convict the defendant?" To which the juror replied, "We didn't believe what he [defendant] said, either." This incident, if true, is not of the slightest significance in an appellate review. As an empirical study in psychoanalysis it may be worth a lawyer's while to get a discharged juror's reaction to the evidence and to learn the mental processes by which the minds of laymen arrive at their verdicts. It has no other value. (*Matthews v. Langhofer,* 110 Kan. 36, 202 Pac. 634; *State v. Buseman,* 124 Kan. 496, 260 Pac. 640; *State v. O'Keefe,* 125 Kan. 142, 263 Pac. 1052.)

Other matters not formally assigned as errors which are urged against the judgment have all been noticed, but need no discussion. The fact that the child was born in less than nine months from the time when the illicit relations between defendant and the prosecuting witness were shown to have begun was a fair subject for argument before the jury, but is of no controlling importance now. The girl's mother, who had borne eight children and was much experienced in such matters, was of the opinion that the child was prematurely born. The nurse who assisted at the accouchement thought otherwise. This court is not a fact-finding tribunal, and it serves no purpose to ask us to make independent deductions concerning the truth or falsity of the state's evidence. (*State v. Rieman,* 118 Kan. 784, 785, 236 Pac. 641; *Sawtelle v. Cosden Oil & Gas Co.,* 128 Kan. 220, 225, 277 Pac. 45.) The affidavits filed in support of the motion for a new trial which purported to tell of lascivious acts of the McClellan sisters with other persons were not of sufficient potency to compel the granting of a new trial; and certainly the affidavit that defendant failed to obtain evidence from "various young men who participated in acts of intercourse with the two McClellan

sisters during the fall and winter of 1923" furnished no basis for a new trial. These various young men, if any there be, would be no more likely to appear or testify to that effect at another trial than they were at the last.

The judgment is affirmed.